UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RONNIE D. DECKER,                        )
           Plaintiff,                 )
                              )
      vs.                              )          1:11-cv-0005-WTL-TAB
                              )
SMITHVILLE COMMUNICATIONS, INC.          )
f/k/a SMITHVILLE TELEPHONE CO.,          )
           Defendant.                 )

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction**

      Plaintiff Ronnie Decker claims he was denied overtime compensation in violation of the

Fair Labor Standards Act.  His claim hinges on the applicability of administrative, professional,

and combination exemptions.  Plaintiff's primary job duties are the critical dispute between the

parties.  Defendant relies heavily on Plaintiff's deposition testimony and resume to show that

Plaintiff engaged in management-related work.  In contrast, Plaintiff mostly relies on his

affidavit and job description to show that his managerial duties were minimal and that his

primary duties consisted of help desk tasks.

      To help eliminate these contrasts, and thus avoid disputed material facts, Defendant cries

foul over inconsistencies between Plaintiff's deposition and affidavit testimony.  As a result,

Defendant makes a convincing argument that could lead a jury to conclude Plaintiff's primary

duties were related to management and that he exercised discretion on matters of significance so

that he was an exempt employee.  But several parts of the record suggest otherwise.  While

certain portions of Plaintiff's affidavit contradict his deposition, the Court need not surgically

examine these inconsistencies.  This is because when the smoke clears a crucial affidavit allegation remaining uncontroverted is that Plaintiff spent eight hours a day on help desk tasks. This and other evidence could lead a jury to conclude that Plaintiff's primary duties were not managerial and therefore that Plaintiff was not an exempt employee.  As more fully set forth below, the Magistrate Judge recommends that Defendant's motion for summary judgment [Docket No. 30] be denied.

## II.    Discussion

Defendant asserts that administrative, professional, and combination exemptions preclude Plaintiff's overtime claim.  Defendant bears the burden of establishing that Plaintiff is covered by an exemption.  *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012).  As a remedial statute, the exemptions are narrowly drawn against employers, and "limited to those establishments plainly and unmistakably within their terms and spirit."  *Id.* (internal quotation marks omitted).  For an employee to be employed in a bona fide administrative capacity, that employee must be:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . .
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Id.* at 572 (citing 29 C.F.R. § 541.200(a)).  The parties do not dispute that prong one of the exemption is satisfied and thus the Court focuses its analysis on prongs two and three.

### A.    *Primary job duties*

"The second prong of the test for the applicability of the administrative exemption requires that the qualifying employee's 'primary duty [must be] the performance of office or

non-manual work directly related to the management or general business operations of the employer or the employer's customers.'" *Schaefer-LaRose*, 679 F.3d at 573 (citing 29 C.F.R. § 541.200(a)(2)). The second prong can be broken down into a two-step analysis. The first step requires the Court to "ascertain whether the employee's work is office or nonmanual work." *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 538 (7th Cir. 1999); *see also Kennedy v. Commw. Edison Co.*, 410 F.3d 365, 372 (7th Cir. 2005) (using a two-step approach). The first part of the analysis is not disputed. Plaintiff admitted in his deposition that the primary type of work he performed was office work. [Docket No. 31, Ex. 1 at 170–71.] Moreover, Plaintiff's response brief does not dispute that Plaintiff's duties focus on office or nonmanual work. [Docket No. 34 at 10– 11.] Instead, Plaintiff focuses on the second part of the analysis: whether his primary duties are related to management or general business operations.

"Administrative tasks constitute an employee's primary duty if the tasks represent 'the major part, or over 50 percent of the employee's time.'" *Kennedy*, 410 F.3d at 373 (citing 29 C.F.R. § 541.103). The Seventh Circuit, nonetheless, has cautioned that "time alone is not the only relevant factor we must consider," and a primary duty is "that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time." *Piscione*, 171 F.3d at 540–41; *see also Schaefer-LaRose*, 679 F.3d at 574 ("[W]hen an employee is engaged in the core function of a business, his or her task is not properly categorized as administrative."). The regulations provide further guidance:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a

manufacturing production line or selling a product in a retail or service establishment.
(b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
(c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

*Schaefer-LaRose*, 679 F.3d at 573 (citing 29 C.F.R. § 541.201).

Case law further illuminates these regulations.  In *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1323 (S.D. Fla. 2005), the court concluded that the plaintiff was not a production employee because his duties primarily consisted of developing and improving a network system; writing specifications for wireless network technology, routers, and switches; specifying network protocols; designing and installing cable infrastructure; consulting with clients; interacting with vendors; approving installations; and assigning work to technicians.  *Id.* at 1323.  According to the court, while some of these duties may be considered manual in the sense that plaintiff performed physical actions, "those actions do not negate the administrative exemption because of the prominence of Plaintiff's problem-solving, office, and administrative duties."  *Id.* at 1323–24; *see also Combs v. Skyriver Comm'ns, Inc.*, 159 Cal. App. 4th 1242, 1264–65 (2008) (concluding that the administrative exemption did not apply because plaintiff's primary job duty was to function as director of network operations); *Bobadilla v. MDRC*, No. 03-CV-9217, 2005 WL 2044938, at *7–9 (S.D.N.Y. Aug. 24, 2005) (examining plaintiff's resume, credentials, job title, pay, and a position questionnaire, and concluding that "plaintiff's

4

primary duties included a combination of the duties covered in 29 U.S.C. § 213(a)(17).").

In contrast, in *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 52 (D.D.C. 2006), the court

concluded that just because plaintiff "was a leader among his co-workers does not transform him

into a bona fide administrative employee." The court explained that "based on Price's own

testimony, the work that he characterized as 'doing [his supervisor's] job' amounted to, at most,

thirty percent of his overtime hours; he provided no estimate of the work as a percentage of his

regular hours." *Id.* Consequently, the court concluded that there was a genuine dispute of

material fact as to the plaintiff's primary job duties. *Id.*; *see also Heffelfinger Elec. Data Sys.*

*Corp.*, Nos. 08-56319, 08-56384, 2012 WL 2045960, at \*3 (9th Cir. June 7, 2012) (explaining

that while technical Team Lead Dwyre spent part of his time completing duties that fall within

the administrative exemption, Dwyre asserted that he spent nowhere near 50% of his time on

such activities; the court concluded there was a genuine dispute of material fact).

Defendant compares Plaintiff's duties to those in *Bagwell*, *Combs*, and *Bobadilla*.

Defendant asserts that Plaintiff's duties included:

> building a new virtual server network; implementing the Solomon accounting platform;
> managing and maintaining servers; setting up the Windows 2008 server; developing group
> policies to deploy software; enforcing corporate policy concerning regulatory compliance;
> planning, designing and implementing an Active Directory infrastructure; evaluating
> network structure/operation to improve security, efficiency and throughput; monitoring
> network usage; recommending network purchases; researching and recommending new
> technology, problem-solving network issues, creating and maintaining change
> documentation on servers and infrastructure; training co-workers; serving as liaison with
> Smithville vendors; solving a client problem; and advising management on network issues.

[Docket No. 31 at 17.] Other projects included building a new physical infrastructure to enhance

network functionality, recommending the purchase of a new server, transferring data to servers,

and serving as a project manager and technical lead for multiple network upgrades. [*Id.* at 18.]

According to Defendant, these duties are of principle importance to Defendant and constitute Plaintiff's primary duties.

   In contrast, Plaintiff characterizes his job duties primarily as help desk tasks.  Some of these duties included:

> creating, maintaining and changing access for user accounts; providing user support for personal computers, software and mobile devices; backing up data; handling restore requests; maintaining production printers, including obtaining page counts; changing cartridges in printers; checking for and rolling out Microsoft updates; and providing support for videoconferencing needs.

[Docket No. 34 at 11.]  Plaintiff's affidavit also asserts that he worked on help desk functions eight hours a day, and worked every day on help desk requests.  [Docket No. 35, Ex. 3 at 2.] Plaintiff further contends that his role implementing and maintaining Defendant's network was limited because he did not work at Defendant's Network Operations Center in Bloomington, Indiana, which is responsible for managing the in-house network and the public-facing network. [Docket No. 32, Ex. 1 at 20–21.]

   Defendant is correct that this case is similar to *Bagwell*, *Combs*, and *Bobadilla* to the extent that Plaintiff installed, maintained, and managed certain network and computer operations.  This case, however, is more analogous to *Hunter* and *Heffelfinger*, where despite completing management-related duties, the courts concluded that a reasonable jury may find that those management duties did not comprise the majority of the plaintiffs' duties.  While Defendant relies heavily on Plaintiff's deposition to describe Plaintiff's job duties, it is unclear from Plaintiff's deposition the exact or approximate amount of time Plaintiff spent performing those duties.  Plaintiff's affidavit, however, asserts that his primary duties were help desk related because he spent eight hours a day performing such work.  [Docket No. 35, Ex. 3 at 2.]  This

6

testimony, as well as additional evidence discussed below, is sufficient to raise a genuine dispute as to Plaintiff's primary duties.

Defendant contends that Plaintiff's affidavit contradicts his deposition testimony. [Docket No. 41.]  When parties present "statements in sworn affidavits that directly contradict previous and specific sworn testimony of the same witness, the later, contradictory affidavit statements ordinarily cannot raise a disputed fact." *Khan v. Eli Lilly & Co.*, No. 1:06-CV-0766-DFH-TAB, 2008 WL 8333203, at *2 (S.D. Ind. Mar. 27, 2008).  While some parts of Plaintiff's affidavit are undoubtedly contradictory, Plaintiff's deposition testimony does not directly contradict the allegation in Plaintiff's affidavit that he spent eight hours a day performing help desk duties.[1]  Despite its best efforts, Defendant has failed to clarify the muddy evidence of the exact or approximate amount of time Plaintiff spent doing managerial duties.  Merely providing examples of projects and tasks that Plaintiff completed fails to carry Defendant's summary judgment burden of establishing Plaintiff falls within an FLSA exemption.

In fact, several significant portions of Plaintiff's deposition testimony are consistent with Plaintiff's affidavit.  For example, Plaintiff testified that he was a project manager for only a "couple of projects at Smithville towards the end that I was—that she had handed to me to oversee." [Docket No. 31, Ex. 1 at 18.]  "Couple" and "towards the end" imply that Plaintiff's role as a project manager was limited.  Plaintiff also testified that it took three weeks and "a lot

---

[1]Defendant contends that Plaintiff's affidavit contradicts deposition testimony regarding the extent of research and analysis performed, the point person for the network rebuild, time spent creating the active directory, an off-duty lunch encounter, an intake interview, and the role of the Network Operations Center.  [Docket No. 41 at 3–9.]  The Court need not determine whether these issues contradict Plaintiff's affidavit since genuine issues of material facts can be found in other parts of the record.

of late nights" to set up the logical infrastructure in the active directory.  [Docket No. 41 at 6.]

If Plaintiff completed the help desk duties during his normal work day and devoted extra time at

night to the directory project, Plaintiff's affidavit and deposition testimony can be harmonized.

Plaintiff also alleges in his complaint that he worked approximately 60 hours of overtime per

month [Docket No. 1 at 4], and Defendant does not refer the Court to any part of Plaintiff's

deposition that contradicts this allegation.  Therefore, the allegations in Plaintiff's affidavit

concerning the time devoted to help desk duties are not sufficiently contradictory to his

deposition to overcome the conclusion that Plaintiff raises a genuine issue of material fact as to

Plaintiff's primary duties.

      Other parts of the record further raise a genuine issue of material fact and support

Plaintiff's assertion that he spent the majority of his time completing help desk duties.  Plaintiff's

job description states that the percentage of time spent on special and nonrecurring projects is

10%.  [Docket No. 38, Ex. B.]  Drawing all reasonable inferences in Plaintiff's favor, a

reasonable jury could conclude that the duties listed by Defendant [Docket No. 34 at 11] are

special and nonrecurring projects that only comprised 10% of Plaintiff's duties.  Additionally,

the job description states that Plaintiff could potentially be promoted to an IT manager [Docket

No. 38, Ex. B], and according to Defendant, Patricia Taylor was the IT manager.  [Docket No.

31 at 4.]  Drawing all reasonable inferences in favor of Plaintiff, a reasonable jury could

conclude that Plaintiff's primary duties were not managerial or primarily core functions of the

business.  Thus, unlike *Bagwell*, *Combs*, and *Bobadilla*, these facts are unique to this case and

raise a genuine dispute as to Plaintiff's primary duties.

      Defendant contends that Plaintiff's resume implies that his primary duties included

8

maintenance and installation-related network management.  A resume is not conclusive as to the

time Plaintiff spent on these duties; it is simply a marketing tool that Plaintiff may well have

used to only list his most impressive work.  Additionally, Plaintiff's title of "Network

Administrator" and previous work and educational experiences do not necessarily confirm that

Plaintiff employed those skills on a daily basis or in a manner that his job duties were primarily

related to management or general business operations.  Although it is undisputed that Plaintiff

primarily performed office work [Docket No. 31, Ex. 1 at 170–71], that does not resolve the

question of whether that work primarily consisted of managerial or help desk duties.  Ultimately,

Plaintiff's resume, credentials, job title, and deposition are compelling evidence of his primary

duties.  But Plaintiff only needs to identify a genuine dispute of material fact to survive summary

judgment.  He has done so through portions of his affidavit, job description, and deposition.

Plaintiff's resume may provide Defendant with fruitful cross examination at trial, but is

insufficient to summarily preclude a trial.  Accordingly, the Magistrate Judge recommends that

summary judgment be denied because there is a genuine dispute of material fact as to Plaintiff's

primary job duties.

       *B.*     *Discretion and independent judgment*

     A genuine dispute of material fact also exists under the third prong of the administrative

exemption.  The third prong requires that Plaintiff's primary duties include the "exercise of

discretion and independent judgment with respect to matters of significance." *Schaefer-LaRose*,

679 F.3d at 577 (citing 29 C.F.R. § 541.200(a)(3)).  Defendant asserts that Plaintiff exercised

discretion and independent judgment because he made:

> recommendations for the corporate network upgrade; recommended the purchase of a new
> HP server, resulting in a tenfold increase in data speed; traveled to a customer site to resolve

a customer issue; changed the Active Directory infrastructure; recommended technology changes, many of which were accepted; researched various software for use; made multiple recommendations for changes to the network structure; changed the configuration on the hard drives; mapped out migration of data processes; analyzed and resolved a security issue with the bill payment system; analyzed system performance statistics and implemented changes to increase efficiency; made determinations on the location to house various software; analyzed network circuitry and structure; recommended getting rid of Citrix; analyzed functions for the disaster recovery site; analyzed issues with backup speed, resulting in an increase of 6 times the speed; researched and made security recommendations; analyzed and moved data to a virtual server in an emergency situation, preventing the loss of server data; and troubleshot issues with servers during down times.

[Docket No. 31 at 23.]

Plaintiff does not dispute that he made recommendations and performed these duties. However, even assuming these duties reflect discretion and independent judgment with respect to matters of significance, there remains a genuine dispute as to the frequency and extent that Plaintiff made recommendations and performed those duties.  Similar to the second prong, the third prong also emphasizes that such discretion was part of Plaintiff's primary duties.  There are numerous parts of the record in which a reasonable jury could conclude that Plaintiff's discretion and independent judgment was limited and not part of his primary duties.  As noted, the job description characterizes special and nonrecurring projects as only 10% of Plaintiff's duties. The job description also implies that he was not a manager and states that he was subject to "direction" type supervision.  In fact, according to Defendant, throughout Plaintiff's "tenure, Plaintiff reported to Patricia Taylor, IT Manager."  [Docket No. 31 at 4.]  Moreover, Plaintiff's affidavit asserts that he spent eight hours a day doing help desk duties, which do not involve the use of discretion as to matters of significance.  Drawing all reasonable inferences in favor of Plaintiff, a reasonable jury could conclude that Plaintiff's discretion and independent judgment for significant business matters was limited.  Accordingly, a genuine issue of material fact also

10

exists under the third prong.

      C.    *Computer professional and combination exemptions*

Defendant also argues that Plaintiff is exempt from overtime compensation under the

computer professional and combination exemptions.  [Docket No. 31 at 19.]  29 C.F.R. §

541.200(b) exempts computer professionals whose primary duties consist of:

> (1) The application of systems analysis techniques and procedures, including consulting
> with users, to determine hardware, software or system functional specifications;
> (2) The design, development, documentation, analysis, creation, testing or modification of
> computer systems or programs, including prototypes, based on and related to user or system
> design specifications;
> (3) The design, documentation, testing, creation or modification of computer programs
> related to machine operating systems; or
> (4) A combination of the aforementioned duties, the performance of which requires the same
> level of skills.

29 C.F.R. § 541.708 provides:

> Employees who perform a combination of exempt duties as set forth in the regulations in this
> part for executive, administrative, professional, outside sales and computer employees may
> qualify for exemption. Thus, for example, an employee whose primary duty involves a
> combination of exempt administrative and exempt executive work may qualify for
> exemption. In other words, work that is exempt under one section of this part will not defeat
> the exemption under any other section.

Plaintiff does not dispute that he performed numerous duties that fall within 29 C.F.R §

541.200(b) and § 541.708, but asserts that these were not his primary duties, even when

considered cumulatively.  As discussed above, the Court must draw all reasonable inferences in

favor of Plaintiff and when doing so finds that a reasonable jury could conclude that designing,

testing, modifying, and managing Defendant's computer networks constituted only a small

percentage of Plaintiff's duties.  Plaintiff's affidavit asserts that he spent eight hours a day on

help desk functions, his deposition testimony reflects that he was a project manager for only a

"couple" of tasks, and Plaintiff's job description states that he spent only 10% of his time on

special and nonrecurring projects.  Thus, there is a genuine issue of material fact and summary

judgment based on the computer professional and combination exemptions is inappropriate.

**IV.     Conclusion**

       Defendant has presented evidence that a jury may find compelling.  But at the summary

judgment stage, where the Court must draw all reasonable inferences in favor of the nonmoving

party, Plaintiff has presented sufficient evidence to raise genuine issues of material fact and

survive summary judgment.  Accordingly, the Magistrate Judge recommends that Defendant's

motion for summary judgment [Docket No. 30] be denied.  Any objections to the Magistrate

Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C.

§ 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute

waiver of subsequent review absent a showing of good cause for such failure.

       Dated:   07/18/2012

                              Tim A. Baker
                              United States Magistrate Judge
                              Southern District of Indiana

Copies to:

Richard Holtzman Hedrick
BARNES & THORNBURG LLP
holt.hedrick@btlaw.com

Shannon Bogard Mize
MIZE LAW OFFICE
shannon@shannonmizelaw.com

Patricia L. Ogden
BARNES & THORNBURG
patty.ogden@btlaw.com

Kenneth J. Yerkes
BARNES & THORNBURG LLP
ken.yerkes@btlaw.com